IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DERRICK L. SMITH,

                                                                                               OPINION and ORDER

                  Plaintiff,

                                                                                              09-cv-387-bbc

     v.

GREGORY GRAMS, Warden,

                  Defendant.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this prisoner civil rights lawsuit, plaintiff Derrick L. Smith has been given two opportunities to amend his complaint to repair pleading defects. Dkts. ## 17, 29. Now before the court is his latest attempt to do so. (Plaintiff moved for an extension of time to file the amended complaint, dkt. #34. That motion will be granted and the late-filed proposed amended complaint, dkt. #35, deemed the operative pleading.) Once again, plaintiff fails to state a claim upon which relief may be granted. This time, his complaint will be dismissed with prejudice. In his most recent proposed amended complaint, dkt. #35,

---

[1] In a previous filing, plaintiff agreed to drop his claims against other defendants to avoid problems arising from Fed. R. Civ. P. 20 and has submitted a third amended complaint naming Gregory Grams as the sole .defendant. I have amended the caption accordingly.

1

plaintiff describes in 28 pages those things he believes defendant Gregory Grams has done to violate his rights. What started as a single claim related to a problem with defendant Grams's refusal to confirm and verify plaintiff's request for legal loans has ballooned into a laundry list of grievances that plaintiff has suffered while incarcerated. Compare Cpt., dkt. #1 (6 pages) with Sec. Am. Cpt., dkt. #35 (28 pages). As I explain below, each of his claims has problems of one sort or another. Plaintiff's claim that defendant acted with deliberate indifference to his serious medical needs will be dismissed with prejudice for failure to state a claim. As warden, defendant cannot be held liable for referring plaintiff to take his health-related concerns to the health professionals in the Health Services Unit. Plaintiff's claims that defendant denied him his right of access to the courts by interfering with certain habeas and criminal appeals will be dismissed without prejudice because plaintiff failed to exhaust his administrative remedies with respect to those claims. The only denial of access injury plaintiff identifies with respect to the habeas and criminal appeals is their dismissal, but each of those cases was dismissed after plaintiff filed this lawsuit, meaning plaintiff did not finish the administrative grievance process before filing this lawsuit.

Other claims fail because plaintiff fails to allege sufficient facts to support those claims, once again failing to comply with Fed. R. Civ. P. 8. Plaintiff's due process, retaliation and equal protection claims lack any factual support. In addition, although plaintiff describes some facts supporting his claims related to a lack of hygiene supplies and denial of access to the courts for his civil claim, he leaves out important facts. Because I have already given plaintiff two opportunities to describe the facts that support his claims, this

2

time I will dismiss with prejudice those claims failing to comply with Rule 8.

## ALLEGATIONS OF FACT

Plaintiff Derrick L. Smith is a prisoner at the Columbia Correctional Institution, where defendant Gregory Grams is the warden.

In 2003, plaintiff filed a lawsuit in state court against officials at the Waupun Correctional Institution arising out of an assault he suffered in November 2003. That lawsuit was assigned case number 03-cv-3547. After attempting to litigate his case for some time, he sought a continuance from the court and was not allowed it. The court dismissed the lawsuit. (Plaintiff does not provide many details regarding why, when or how his case was dismissed, but according to online court records maintained at Wisconsin Circuit Court Access Program, http://www.wcca.wicourts.gov, the case was dismissed without prejudice on April 27, 2004 for plaintiff's failure to serve defendants within the statutory time limit.) After being told in the early part of 2009 that he would be returned to the Waupun Correctional Institution and still had to pay court costs and filing fees in case number 03-cv-3547, plaintiff decided to draft a new complaint related to the November 2003 assault.

At the time, plaintiff was litigating seven other cases. These included two appeals of state criminal cases challenging revocation, one appeal of a related state petition for writ of habeas corpus and four pending criminal cases. With respect to plaintiff's criminal appeals, plaintiff's public defender decided there were no appealable issues and was given leave to withdraw from the case, after which plaintiff filed his own appeals. He also submitted a

3

separate petition for a writ of habeas corpus, challenging the legality of the convictions he was appealing simultaneously. The court of appeals dismissed plaintiff's appeals on September 10, 2009 and dismissed the petition for writ of habeas corpus on June 25, 2009, denying a motion for reconsideration on July 7, 2009.

In the course of these lawsuits, plaintiff sought and was granted several extensions of time related to his lack of supplies, envelopes and postage. (Indeed, according to online records, on July 2, 2009, after plaintiff filed this lawsuit, his notice of appeal was deemed timely filed. Wisconsin Supreme Court and Court of Appeals Case Access Program, http://wscca.wicourts.gov.) This lack of materials was caused by plaintiff's having "quickly burned through" the $200 limit the Wisconsin Department of Corrections places on legal loans to prisoners. Wis. Admin. Code § DOC 309.51(1). When he attempted to have defendant "verify and confirm" that his requests for supplies was related to an appeal of his conviction so that he could receive money beyond the $200 limit, defendant refused to do so. Plaintiff's "lack of supplies ultimately [led] to all three . . . cases being dismissed." Dkt. #35, at 21. Plaintiff wanted to submit documents supporting his position and arguments in these appeals but could not do so because he did not have supplies as a result of his inability to receive legal loans.

At some point in the course of bringing his appeals, plaintiff submitted a new civil complaint to the Circuit Court for Dane County, in which he revived his claims related to his November 2003 assault at Waupun and added new claims against defendant for denial of plaintiff's right to access to the courts. The clerk of courts "held" the complaint until

4

plaintiff "could correct some defects in it." Plaintiff "explained [to the clerk of courts] in 2 letters that he could not do so because of [defendant's] interference with him applying for legal loan extensions." When plaintiff submitted his request for a legal loan extension, he submitted it under the caption of "imminent danger." Defendant refused to "confirm and verify" the request. The clerk of courts returned plaintiff's new lawsuit, stating that he could not proceed in the case because of its "many defects." In November 2009, the statute of limitations may have run out on plaintiff's assault claim, which involved incidents occurring in November 2003.

Aside from these problems, plaintiff had difficulty challenging several administrative decisions and grievances, such as decisions by his parole board, the prison review committee, grievances related to rules and conditions within the prison, medical decisions, school suspensions and legal loan extension denials.

Plaintiff has had other difficulties while in prison. Starting in November 2003 while he was at the Dodge Correctional Institution, 100% of his trust fund account went to paying the filing fee and costs for case number 03-cv-3547. Plaintiff challenged the decision but was unsuccessful, both at that prison and at the Columbia Correctional Institution when he was transferred there. Plaintiff's lack of money in his trust fund account meant he was not able to purchase "needed hygiene supplies i.e. deodorant, aftershave lotion, mouthwash, skin lotion, etc." (Plaintiff alleges that he had received "hygiene supplies i.e. razor, deodorant, aftershave lotion, shampoo, toothpaste & brush, and soap" while in the Dodge County Correctional Institution but had run out of some by the time he was at the Columbia

5

Correctional Institution.)

Although plaintiff was able to shower once a day and could take "birdbaths" as needed (wash using the sink), he nonetheless developed body odor and bad breath. Plaintiff asked defendant if he could be allowed to work or allowed to receive money some other way so he could buy hygiene supplies. Defendant denied his request. In addition, plaintiff "would verbally explain his plight" to defendant "when [plaintiff] by chance would catch [defendant] doing prison rounds." Because plaintiff could not purchase hygiene products, he received insults and "barely avoided being attacked" by other prisoners who had hygiene products.

In addition, plaintiff has experienced several medical problems. He suffers from a recurring skin condition called folliculitis that causes his skin to grow irritated and swell with pimples or pustules. In addition, plaintiff fell in the shower in December 2008 and hit his head. Since then, he has suffered from difficulty breathing when sleeping, loss of balance, vertigo, light sensitivity and headaches. He has also been diagnosed with arthritis and degenerative bone disease in his neck, suffers from neck pain and has dark blood in his stool. Among other things, medical service providers have not performed tests to discover his folliculitis, performed only a cursory review of his head injuries without providing pain medication for it, provided only over-the-counter pain medication for his neck pain and did little more than visually examine the stool problem.

Also, one time, nurses at the Columbia Correctional Institution gave plaintiff hydrocortisone although his file stated that he was allergic to it. He suffered an allergic

6

reaction and had to go to the emergency room. Plaintiff filed many grievances related to this and his other problems with his medical care. As warden, defendant reviewed those complaints. "In practically all [plaintiff's] complaints, [defendant] defers him to direct his complaints elsewhere," often, if not always, to Ms. Alsum, the Health Services Unit manager. For example, in response to at least one of plaintiff's grievances, defendant stated that "Health Services Medical . . . Staff are licensed professionals who receive their medical direction from the Bureau of Health Services. You may contact Ms. Alsum, CCI HSU Manager, if you believe you are not receiving proper medical . . . care."

OPINION

Plaintiff contends that defendant retaliated against him, violated his right to procedural due process and equal protection, acted with deliberate indifference to his serious medical needs and denied him access to the courts.

A. Retaliation, Due Process and Equal Protection

Regarding plaintiff's retaliation, due process and equal protection claims, plaintiff once again fails to allege facts suggesting that defendant violated these rights. In support of his retaliation claim, he points only to the fact that defendant refused to "confirm and verify" his request for legal loans for his 2009 civil case after he received it, suggesting that he did so because he noticed that he had been named in the lawsuit.

However, plaintiff also alleges that defendant was already failing to "confirm and

7

verify" his requests for legal loans in cases before the civil case was filed; indeed, the 2009 civil case included a claim against defendant for his earlier refusals to "confirm and verify." In addition, plaintiff alleges that he asked to have his case confirmed for a legal loan extension "under the caption of imminent danger" although the claims concerned only a six-year-old assault that had occurred at a different prison and a denial of access to the courts, neither of which suggested imminent danger. In light of these allegations, it is not reasonable to infer that defendant had a retaliatory motive for refusing to "confirm and verify" plaintiff's requests for a legal loan extension.

Plaintiff adds that defendant retaliated against him by arranging to have him sent back to Waupun (it has not happened yet), but fails to allege any facts suggesting that defendant was involved in any decision to transfer him back to Waupun. As for plaintiff's due process and equal protection claims, he has not alleged that he was deprived of anything that would entitle him to receive due process, Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (procedural due process required only when prisoner faces "atypical and significant hardship . . . in relation to ordinary incidents of prison life"), or that defendant treated plaintiff differently from others.

### B.  Deliberate Indifference

Plaintiff's deliberate indifference claim boils down to his frustration with defendant's failure to step in after reviewing plaintiff's grievances about his medical care. In other words, plaintiff is seeking to hold defendant liable for failing to intercede and fix matters that had

8

been delegated to others. As the Court of Appeals for the Seventh Circuit has explained, "Public officials do not have a free-floating obligation to put things to rights. . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). Although defendant was the warden, he referred plaintiff to the health services unit, explaining that disputes over medical care were handled by the Health Services Unit. He was not required to insure that unit did what it was supposed to do.

Moreover, even if at some point, defendant could be held responsible for a failure of a separate unit in his prison, as a prison official with no apparent medical expertise, it was proper for defendant to defer to the decisions made by medical professionals at the Health Services Unit when it came to plaintiff's complaints about his medical care. Hayes v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008) (concluding that prison officials acted properly in light of "presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoner's medical care").

As for plaintiff's concerns related to his lack of hygiene, such an Eighth Amendment claim for lack of hygiene items requires a denial of the "minimal civilized measure of life's necessities." Townsend v. Fuchs, 522 F.3d 765, 774 (7th Cir. 2008). Plaintiff does not describe what defendant knew about his lack of hygiene products or what he did in response, except to say that he told defendant of his "plight" and that defendant denied his request to obtain money so that he could purchase hygiene products. Moreover, the hygiene supplies plaintiff allegedly lacked are hardly the sort that would amount to a denial of the "minimal

9

civilized measure of life's necessities." Plaintiff concedes that he received soap, toothpaste and a toothbrush and was allowed daily showers; not having additional toiletries was not a denial of "life's necessities" and does not rise to the level of a constitutional claim.

### C. Denial of Access to the Courts

Plaintiff's principal claim is that defendant denied him access to the courts by refusing to "confirm and verify" several requests for legal loan extensions after plaintiff passed his $200 legal loan limit. In particular, plaintiff contends that defendant impeded plaintiff's ability to pursue two criminal appeals, a petition for a writ of habeas corpus and a civil suit related to the November 2003 assault. (Plaintiff adds that defendant impeded his ability to pursue several administrative decisions and grievances, but as I explained in a previous order, plaintiff's inability to pursue grievances does not implicate the constitutional right to have access to the courts so long as he can still file or maintain a lawsuit related to that grievance. Lewis v. Casey, 518 U.S. 343, 351 (1996). There is no suggestion that plaintiff attempted to pursue any lawsuit related to the many grievances he identified.)

As for defendants' alleged interference with plaintiff's court cases, the cases are of two types: the civil case and the habeas and criminal cases. For the habeas and criminal cases, there is no suggestion that defendant impeded plaintiff's ability to litigate his lawsuits at least until the cases were dismissed; plaintiff alleges that before dismissal, each time he needed an extension, he received one. Christopher v. Harbury, 536 U.S. 403, 415 (2002) (explaining that denial of access to courts claims should not be brought when remedy may

10

be pursued in other, simpler case). Thus, to the extent plaintiff is asserting claims on the ground that defendant denied plaintiff's access to the courts at some point before dismissal of his habeas and criminal cases, those claims must be dismissed because he identifies no instance in which defendant's failure to grant him a legal loan extension undermined his ability to litigate his cases.

The only alleged injury plaintiff identifies is dismissal of his cases. However, as plaintiff alleges, those cases were not dismissed until September 10, 2009 and June 25, 2009, after plaintiff filed the present lawsuit on June 19, 2009. Under the 1996 Prison Litigation Reform Act, prisoners must exhaust administrative remedies *before* filing a civil suit and may not complete the grievance process while litigation in federal court is pending. Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004).

Although failure to exhaust is an affirmative defense and should generally not be raised by the court, cf. Massey v. Helman, 196 F.3d 727 (7th Cir. 1999), it is appropriate to dismiss a claim on the ground that an affirmative defense would bar the claim when, as in this case, it is apparent from the face of the complaint. Gleash v. Yuswak, 308 F.3d 758, 760-61 (7th Cir. 2002); Walker v. Thompson, 288 F.3d 1005, 1009-10 (7th Cir. 2002); see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) ("[S]ua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint."). Therefore, I will dismiss plaintiff's claims related to his habeas and criminal appeals without prejudice to plaintiff's refiling those claims after he exhausts his administrative remedies.

With respect to the claim for denial of access related to his civil case, plaintiff fails to

11

allege the facts that matter the most. Although he alleges that the clerk of courts returned his civil complaint because of its defects and that defendant denied his request for a legal loan, plaintiff does not describe (a) what the defects were and (b) how the lack of a legal loan affected his ability to repair those defects. Granted, plaintiff alleges that he was not able to receive certain supplies, but he also alleges that he was able to write the clerk of courts two letters explaining that he could not repair the defects. Without further explanation as to what the defects were and why plaintiff could not repair them without legal loans, there is no factual basis to support an inference that defendant interfered with plaintiff's ability to litigate his case.

In most instances, a plaintiff's failure to plead these facts would warrant an opportunity to amend the complaint. However, in this case, plaintiff has had two opportunities to fix Rule 8 problems. With respect to this problem in particular, I explained to plaintiff that he would have to allege facts showing why defendant was responsible for plaintiff's problems litigating the case, including describing "what . . . each court [said] when it dismissed his case" so that the lack of supplies might be tied to plaintiff's difficulties litigating his case. Plaintiff has had more than ample opportunity to describe the facts that matter, but has chosen instead to remain vague. Therefore, plaintiff will not have another opportunity; this time, the claims with continued Rule 8 problems will be dismissed with prejudice. Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 666-67 (7th Cir. 2007) (repeated failure to remedy same pleading deficiency warrants dismissal with prejudice).

This does not include the claims for denial of access to the courts related to the appellate court dismissals of plaintiff's habeas and criminal appeals because plaintiff failed to exhaust those claims. Ford, 362 F.3d at 401 (dismissal for failure to exhaust is always without prejudice). However, I should point out that, to the extent plaintiff decides to pursue such a claim after exhausting administrative remedies, he will have to explain how the habeas and criminal appeals were not frivolous despite the fact that his defense attorney was allowed to withdraw from his representation of plaintiff on the ground that there were no appealable issues. Harbury, 536 U.S. at 415 (claim for denial of access to courts requires plaintiff to show that he had *non-frivolous* underlying cause of action that has been lost or impeded).

Because all of plaintiff's claims must be dismissed, his pending motions for emergency injunctive relief, for appointment of counsel and for a preliminary injunction will be denied as moot.

ORDER

IT IS ORDERED that

1. Plaintiff Derrick L. Smith's motion for extension of time to file an amended complaint, dkt. #34, is GRANTED; the proposed amended complaint, dkt. #35, is the operative pleading. However, plaintiff's request for leave to proceed on that complaint is DENIED.

2. Plaintiff's claims that defendant Gregory Grams retaliated against him, acted with

13

deliberate indifference to his serious medical needs, and violated his right to due process and equal protection are DISMISSED with prejudice for failure to state a claim upon which relief may be granted.

    3.  Plaintiff's claim that defendant denied him access to the courts by refusing to confirm and verify his request for legal loans to pursue a civil case in the Circuit Court for Dane County is DISMISSED with prejudice for failure to state a claim upon which relief may be granted and plaintiff's claim that defendant denied him access to the courts by refusing to confirm and verify his request for legal loans to pursue habeas and criminal appeals cases is DISMISSED without prejudice for plaintiff's failure to exhaust his administrative remedies.

    4.  Plaintiff's motions for emergency injunctive relief, dkt. #21, motion to appoint counsel, dkt. #30 and motion for preliminary injunction, dkt. #31, are DENIED as moot.

    5. Plaintiff is obligated to pay the unpaid balance of his filing fee in monthly payments as described in 28 U.S.C. § 1915(b)(2).  This court will notify the warden at the Columbia Correctional Institution of that institution's obligation to deduct payments until the filing fee has been paid in full.

    6. A strike will be recorded against petitioner pursuant to § 1915(g); and

7. The clerk of court is directed to close the file.

Entered this 2nd day of February, 2010.

                              BY THE COURT:

                              /s/

                              _____
                              BARBARA B. CRABB
                              District Judge